IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL R. ROMERO | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. DKC-05-1319 |
| WILLIAM WILLIAMS | * | |
| BOBBY SHEARIN | | |
| JAMES V. PEGUESE | * | |
| WAYNE HILL | | |
| MIKE MILLER | * | |
| SGT. S. WATKING | | |
| L. BOWERSER | * | |
| Defendants. | | |

***

**MEMORANDUM**

*Procedural History*

Plaintiff is a Maryland Division of Correction ("DOC") inmate who in 2001 was transferred to this district from the New Mexico Department of Corrections pursuant to the Interstate Corrections Compact ("ICC"). His civil rights complaint, originally filed in letter form in May of 2005, attacked the administrative remedy procedure ("ARP") process provided at the Maryland House of Correction Annex ("MHCA").[1] Paper No. 1. In his court-ordered supplemental complaint for declaratory and injunctive relief and damages, Plaintiff raised a plethora of claims, alleging that Defendants: (1) failed to protect him from gang members operating out of MHCA and the Maryland House of Correction ("MHC");[2] (2) arbitrarily assigned him to punitive administrative segregation; (3) classified him based upon his status as an out-of-state Mexican-American prisoner; (4) failed to provide him employment, education, and rehabilitative treatment; (5) denied him outside recreation

---

[1] Effective May 3, 2006, MHCA was renamed the Jessup Correctional Institution. The court shall continue to use the acronym MHCA when referencing the facility.

[2] MHC was closed in March of 2007.

and contact visits due to administrative segregation assignment; (6) denied him access to library, notary, and photocopying services; (7) denied his right to be heard and to have his complaints addressed through the ARP process; and (8) subjected him to "deplorable" living conditions, *e.g.*, unsanitary and nutritionally deficient food service, inadequate medical care, and a lack of cleaning supplies.[3]  Paper No. 4.

On October 28, 2005, Defendants Shearin, Peguese, Williams, Hill, Miller, Watking, and Bowerser filed a Motion to Dismiss or, in the Alternative, Motion for Summary.   The dismissal request relied, in part, on Defendants' argument that Plaintiff had failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a).  Defendants' dispositive filing further argued that Plaintiff's claims regarding his security level, housing assignment, safety, and medical care were without merit and that his other grounds failed to state a claim because they were not raised with any factual specificity.

On June 28, 2006, this court denied Defendants' dispositive motion without prejudice finding that: (1) in seeking dismissal of claims under 42 U.S.C. § 1997e(a), Defendants did not address Plaintiff's allegations that prison staff have not responded to his ARPs and impeded the ARP process; (2) Plaintiff's opposition had shed light on a number of his original and supplemental claims concerning medical care (Hepatitis C or "HCV" and stress disorder treatment), administrative segregation (out-of-cell activity and recreation, cell cleanliness[4]), and access-to-courts (ARP, notary

---

[3]  Plaintiff subsequently filed a Motion for Injunction. While his request for emergency relief was denied, claims raised in that motion regarding the denial of a nutritionally adequate diet, medical care for "life-threatening" health disorders, and the processing and review of ARP grievances were added as supplemental claims to the Complaint. Paper Nos. 15 & 16. In addition, a "First Amended Complaint" was filed on August 30, 2005, in which Plaintiff reiterated and clarified claims filed in his court-ordered supplement.  Paper No. 21.

[4]  In his opposition, Plaintiff claims that the denial of materials to clean his cell caused him to suffer a skin disease.  Paper No. 38 at 16.

services, and receipt of library materials); and (3) Plaintiff had raised a new *ex post facto* claim, alleging that when transferred to and screened by the DOC in October of 2001, he was classified to medium security, but was reclassified from medium to maximum security in March of 2002, based upon a December, 2001 revision to a prison directive. *Id.*

Defendants were ordered to file a status report regarding: (1) Plaintiff's security and housing status; (2) DOC protocols for HCV treatment and whether Plaintiff has received treatment based on same; (3) treatment for Plaintiff's alleged mental health disorders; (4) Plaintiff's administrative segregation privileges and restrictions, *e.g.*, out-of-cell activities, access to library and notary services, and sanitation; (5) the processing of Plaintiff's ARPs; and (6) Plaintiff's *ex post facto* claim.[5]

*Pending Filings*

Defendants have filed a Supplemental Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.[6] Paper No. 47. Plaintiff has filed Opposition Responses thereto.[7] Paper Nos. 55-56, & 59. Oral hearing is not necessary. The matter may be determined on the briefing before the court. *See* Local Rule 105.6. (D. Md. 2004). For reasons to follow, Defendants' Supplemental Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a Motion for Summary Judgment, shall be granted.[8]

---

[5] Defendants were also afforded the opportunity to renew their Motion to Dismiss or for Summary Judgment.

[6] Defendants ask that the supporting memorandum to their dispositive motion be considered as their status report. Paper No. 48.

[7] In addition, Plaintiff has filed a Motion for Preliminary Injunction or for a Temporary Restraining Order. Paper No. 57.

[8] In order to survive a defendant's properly supported motion for summary judgment, a plaintiff is required to produce some evidence to support each of his claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where all of the materials before the court indicate that there is no genuine

*Analysis*

*Administrative Exhaustion*

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 126 S.Ct. 2378, 2385-86 (2006). Exhaustion under 42 U.S.C. § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s). *See Jones v. Bock*, 127 S.Ct. 910, 919-22 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Defendants re-submit their argument that the Complaint is subject to dismissal for the failure to exhaust administrative remedies. They assert that while Plaintiff has filed numerous ARPs, most

---

issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *See Celotex*, 477 U.S. at 322. While the facts and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only disputed issues of material fact will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

of which relate to his medical claims, the claims have been dismissed due to various deficiencies and have not been raised to the highest administrative remedy level.[9] Paper No. 47 at Ex. 6. Defendants claim that Plaintiff's allegation that he has been prevented from exhausting his remedies is without merit as Plaintiff's ARPs have been deficient and he has been given opportunities to correct these deficiencies but has failed to do so. *Id*. They therefore argue that the failure to exhaust is entirely Plaintiff's own doing.

Plaintiff has consistently claimed that prison staff have not responded to his ARPs and have manipulated, sabotaged, and impeded the ARP process. In his opposition, he seemingly claims that he has attempted to exhaust every issue raised in his complaint. Plaintiff asserts that most ARPs were not acknowledged, while others were arbitrarily dismissed as untimely or ordered to be resubmitted with the intention to sabotage the ARP process. Paper Nos. 55 & 59. Plaintiff further asserts that other remedies were emergency in nature and were also sabotaged, manipulated, and arbitrarily dismissed by prison administrators. *Id*.

Plaintiff's prisoner complaint falls under the exhaustion prerequisites of § 1997e(a), and his claims must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

Plaintiff has raised a number of claims before this court. Given the limited supporting materials provided by Defendants and the exhibits presented by Plaintiff showing his attempts to exhaust his remedies, there is a material disagreement as to what ARPs were filed by Plaintiff, whether he completed the exhaustion process as to each claim, and if not, whether he was impeded

---

[9] Plaintiff's own attachments reveal that he has filed grievances concerning his security level, the handling of his ARPs, attempts to assign him to protective custody, conditions of confinement while MHC-X was placed on lock-down status, medical care, and guard harassment. *See* Paper Nos. 38 & 55.

from doing same. The court therefore concludes that Defendants have failed to meet their burden of demonstrating that Plaintiff failed to complete the exhaustion process by raising all his claims at each and every level of the DOC's ARP process, *e.g.*, prison, headquarters, and Inmate Grievance Office. Therefore, the Complaint shall not be dismissed for the failure to comply with 42 U.S.C. § 1997e(a).

The court has, however, substantively examined the grounds raised by Plaintiff and finds no constitutional violations. Due to the number of allegations raised by Plaintiff, each claim shall be examined *seriatim*.

*Failure to Protect &*
*Assignment to and Restrictions on Administrative Segregation*

Plaintiff claims he was assaulted by a gang member at MHC in November of 2004, and that classification personnel later attempted to place him in general population at MHCA although he was at risk from gang member activity at that prison. In addition, Plaintiff takes issue with his classification to maximum security and his assignment to "punitive" administrative segregation, which allegedly restricted his visits and outdoor recreation. He claims that his classification and assignment are discriminatory in that they are based on his status as an out-of-state Mexican-American.

According to Defendants, in October of 2001, Plaintiff was transferred to the DOC from New Mexico pursuant to an ICC agreement to serve the remainder of a thirty-year sentence for armed robbery and other offenses. The record reveals two prior escapes and that, while he was incarcerated in California pursuant to another ICC transfer, Plaintiff stabbed another inmate in the head and neck. Plaintiff arrived at MHCA on March 13, 2004.[10]   Paper Nos. 28 & 47.

---

[10]   Exhibits indicate that prison authorities believed Plaintiff was trafficking narcotics at MHCA. Paper Nos. 38 & 55.

On April 23, 2004, Plaintiff was transferred from MHCA to MHC. Five months later, on November 28, 2004, he was slashed in the back while returning from the MHC recreation yard. According to Defendants, the matter was investigated and Plaintiff told authorities he did not know who assaulted him but he believed it was gang-related. Plaintiff was placed on administrative segregation and a transfer to MHCA was recommended. Paper Nos. 28 & 47.

On December 2, 2004, Plaintiff was transferred back to MHCA. Defendants state that because Plaintiff was on administrative segregation at MHC, he remained housed on this status upon arriving at MHCA. On December 27, 2004, an MHCA case management team concluded that Plaintiff could be safely housed in general population and made a recommendation. Plaintiff was placed in MHCA general population on December 30, 2004. On that same day, however, he informed Classification Case Manager George Shahinian that he was in danger of harm from a security threat group ("STG"), the Black Gorilla Family ("BGF"). Plaintiff was immediately placed back in administrative segregation for his safety. *Id*.

Defendants state that Plaintiff was offered protective custody status beginning in December of 2004, but refused the assignment and threatened to assault staff if he was placed on protective custody. *Id*. They further claim that while Plaintiff has requested that his security level be reduced from maximum to medium, the request cannot be granted because of his violent incarceration and escape history. *Id*. Defendants note that Plaintiff's housing status has changed. On January 10, 2006, he was removed from administrative segregation per his request[11] and assigned to general population, where he has been assigned a job since June 29, 2006. Paper No. 47 at Ex. 1.

---

[11] In his second opposition Plaintiff opines that the move was "not necessarily 'per his request.'" Paper No. 55 at 5. He maintains that as a result of "psychological torture" and suffering from post-traumatic stress disorder, he had no choice but to agree to move to general population. *Id*.

7

It is well established that inmates do not have a constitutional right to demand to be housed in one prison versus another, absent a showing of significant hardship. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Moreover, assignment to adminstrative segregation does not implicate a liberty interest in the absence of showing an atypical and significant hardship. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). While Plaintiff does complain about the cleanliness of the administrative segregation unit and his inability to have contact visits or to engage in outdoor recreation while there, he has failed to demonstrate that the conditions of confinement on MHCA administrative segregation posed an atypical and significant hardship on his day-to-day prison life.

Further, there is no evidence of discriminatory animus behind Plaintiff's prison and housing assignments. There is no dispute that Plaintiff has a history of at least two prison escapes and several ICC transfers prior to his transfer to the Maryland DOC. Further, he has assaulted an inmate at an out-of-state facility. He is classified to maximum security due to his history of escapes and institutional violence. Moreover, Plaintiff's movement from MHC to MHCA was necessary because of the November, 2004 MHC assault. He was later approved for and placed on MHCA general population, but immediately removed from that status upon information that his safety was at risk from the BGF. He remained housed on administrative segregation because he refused protective custody status. Given his maximum security status, refusal to accept protective custody, and safety issues regarding threats from a STG, Plaintiff was housed on administrative segregation at MCHA.

To meet the standard for establishing a failure-to-protect claim under the Eighth Amendment, a prisoner must project evidence that a prison official "knows of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997).

There is no dispute that Plaintiff was assaulted at MHC on November 28, 2004. There is no showing, however, that any of the named Defendants were placed on notice that Plaintiff was at specific risk of harm from his assailant or was subject to a general risk of harm through a pattern of gang-related or other incidents at MHC.[12] After the assault, Plaintiff was immediately placed on administrative segregation. Plaintiff told investigators that the assault was gang-related, but could not provide any names. Plaintiff was then transferred to MHCA for his own protection and remained on administrative segregation. Several months later, classification personnel recommended Plaintiff's assignment to MHCA general population. He was assigned to that status for several hours, but was immediately removed based upon his subjective claims of risk of harm from gang activity.

In sum, Defendants are plainly caught between a rock and a hard place. While Plaintiff's Complaint challenges his administrative segregation confinement, given his November, 2004 assault, his claims of threats from the BGF, and his refusal of protective custody housing, Plaintiff's removal from administrative segregation would have undoubtedly placed him at an increased risk

---

[12] Plaintiff claims that, two days prior to the assault, he was approached by a suspected gang affiliate who threatened him. Paper No. 38. He maintains that he thought he had diffused the situation but was assaulted within 48 hours. *Id*. At no point, however, does Plaintiff claim that he put MHC officers on notice of the threat.

of harm. Defendants accepted Plaintiff's ICC transfer from New Mexico and it appears that they are doing all that they can to ensure his safety.[13] This claim shall be dismissed

*Rehabilitation*

Plaintiff seemingly claims that assignment to administrative segregation has precluded him from rehabilitative and educational programs. While educational and vocational studies and training, as well as employment, may serve an important rehabilitative function, Plaintiff has no constitutional right to same. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Bowring v. Godwin*, 551 F.2d 44, 48 n.2 (4th Cir. 1977); *Harris v. Murray*, 761 F. Supp. 409, 415 (E.D. Va. 1990).[14]

*Access to Courts*

Plaintiff complains that while on administrative segregation he was denied access to legal materials in the law library and notary services. He also groups his grievance claims into this Fourteenth Amendment allegation, claiming that in preventing him from exhausting his administrative remedies, Defendants are in effect denying him court access due to Prison Litigation Reform Act requirements.

---

[13] Plaintiff claims that he was impermissibly reclassified from medium and maximum security based upon changes to prison directives. While Defendants do not respond to this *ex post facto* claim, the court finds no merit to Plaintiff's allegation. First, while Plaintiff seemingly claims that his reclassification was due to changes in Division of Correction Directive ("DCD") 100-005(Q), there is no showing that his maximum security classification was specifically based upon that particular provision or changes to that provision. Indeed, a review of DCD 100-005(Q) from September of 2001 to January of 2006, reveals no substantive changes to that section. Second, and most importantly, the Ex Post Facto Clause is designed tro prevent the enactment of laws that retroactively alter the definition of crimes or increase punishment for criminal acts. *See California Dep.t of Corrections v. Morales*, 514 U.S. 499, 504-505 (1995). The court finds that the DCD provision at issue is not legislation that affects the definition of crimes or increases punishment.

[14] Plaintiff has failed to demonstrate that he has any liberty interest in rehabilitative programming based upon his ICC transfer to the DOC. *See Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996).

Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only where the inmate is able to demonstrate actual injury from such deprivation. *Id*. at 349. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id*. at 353. Rather, the *Lewis* Court concluded that *Bounds* stood essentially for the proposition that inmates are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they have the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 355. Plaintiff has failed to show how the alleged denial of his access to legal materials and notary services deprived him of access to the courts. Further, the court finds his Fourteenth Amendment claim with regard to access to the ARP process unavailing.

*Conditions of Confinement on Administrative Segregation*

Plaintiff complains of unsanitary food services and the lack of cleaning supplies. Prisoners are guaranteed a nutritionally adequate diet. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). This circuit has held that "inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (citations omitted).

Further, a prisoner may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively, prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. *See Strickler v. Waters*, 989 F. 2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are

adequate to satisfy the object component of an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *see Strickler*, 989 F. 2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). The key in determining whether prison conditions become cruel and unusual is to examine the effect on the prisoner.[15] *See Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).

Plaintiff states that the food is served cold on unclean trays. He alleges no injury as a result of food distribution. Plaintiff also states that materials to clean his cell were not made available to him and he developed a skin fungus.[16] The court finds that no serious deprivation or injury has been established.

*Medical & Mental Health Care*

---

[15] The court further observes that the Prison Litigation Reform Act states that "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). It is settled law that a prior physical injury is required for a prisoner to recover damages for emotional and mental injury. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997).

[16] Plaintiff raised a number of eleventh-hour claims in his initial opposition, asserting that while on administrative segregation: (i) he was denied daily out-of-cell activity for several months; (ii) he was not provided weekly outdoor recreation; (iii) he was exposed to loud noise levels due to the noise emanating from the various mental health inmates "strategically" placed about his cell, causing him to lose uninterrupted sleep; (iv) the recreation hall on administrative segregation is never cleaned and is riddled with feces, urine, and blood; and (v) for a one-month period commencing February, 2005, and a three-month period commencing May, 2005, MHCA was placed on lock-down status due to isolated inmate murders and he was denied "basic necessities." Plaintiff was previously granted leave to supplement and amend his action on several occasions, and was not permitted to further amend his Complaint as to all these claims. Defendants were, however, ordered to provide a status report with regard to Plaintiff's out-of-cell activities on administrative segregation. In their Supplemental Motion for Summary Judgment, alternatively provided as a status report, they allege that as of January 2006, Plaintiff was removed from MHCA administrative segregation.

In his original Complaint, Plaintiff raises rather conclusory claims, asserting that he has been denied medical care for "life-threatening" ailments.[17] Through supplemental materials, Plaintiff claims that he has been denied treatment for Hepatitis C ("HCV") because the DOC does not authorize treatment for the disease. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that objectively, the prisoner plaintiff was suffering from a serious medical need and that subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that

---

[17] In his First Amended Complaint, Plaintiff identifies these ailments as Hepatitis C ("HCV"), post-traumatic stress disorder, and a skin fungus. Paper No. 21.

13

risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter....becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.

Plaintiff's medical claims are raised solely against prison administrators, classification personnel, and an ARP cooordinator. He has failed to show how each of these individuals were directly involved with or interfered with the decisions with regard to his medical care. As prison administrators and staff, Defendants are entitled to rely on the medical decisions made by health care personnel.[18] *See Miltier v. Beorn*, 896 F.2d 848, 856 (4th Cir. 1990)..

Defendants acknowledge that Plaintiff was diagnosed with HCV and state that the DOC has developed a five-step plan for treatment of HCV. Paper No. 47. Pertinent medical records indicate that Plaintiff: (1) received the proper education and counseling regarding HCV; (2) was placed in a critical care clinic for his HCV; and (3) received anti-viral drug treatment for HCV. *Id.* at Ex. 4. Plaintiff confirms that he did receive and complete the HCV treatment and that his "results" are now

---

[18] Section 1983 liability on the part of supervisory defendants requires a showing that: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990) (internal citations omitted).

normal. Paper No. 55 at 12. Clearly, Defendants were not deliberately indifferent to Plaintiff's medical needs.[19]

### *Conclusion*

For the aforementioned reasons, the court shall grant Defendants' Motion for Summary Judgment and enter judgment in favor of Defendants and against Plaintiff.[20]  A separate order follows.

August 16, 2007
_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[19] Within the context of medical care, prisoners are entitled to necessary, albeit limited, psychiatric treatment under certain circumstances.  The Constitution may entitle a prisoner to psychiatric or psychological treatment if a "physician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable medical certainty (i) that the prisoner's symptoms evidence a serious disease or injury; (ii) that such disease or injury is curable or may be substantially alleviated; and (iii) that the potential for harm to the prisoner by reason of delay or denial of care would be substantial."  *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977).  The right is limited to care which can be provided on a reasonable cost and time basis.  *See id*. at 48.  Plaintiff alleges that he was denied treatment for Post-Traumatic Stress Disorder.  Defendants state that Plaintiff was seen by MHCA prison mental health staff in conjunction with his HCV treatment and there is no record that he has been diagnosed with any mental health disorder.  Paper No. 47, Ex. 5.  Plaintiff does not rebut this claim.

[20] In his Motion for Preliminary Injunction or Temporary Restraining Order, Plaintiff complains of an alleged January 2007 guard assault when he was pushed into a wall to be handcuffed behind his back, the denial of emergency medical treatment, and his suffering a dislocation/sprain to his left shoulder.  Paper No. 57.  He asks that the court: (1) order his transfer out of MHCA to any general population in the DOC or, in the alternative, his return to New Mexico; (2) suspend Defendants, along with their predecessors and subordinates, from working at MHCA while he is confined at that facility; and (3) order an immediate criminal investigation by Federal Bureau of Investigation into the alleged January 2007 incident.  *Id*.  The Motion shall be denied.  Plaintiff has failed to demonstrate the likelihood he will be irreparably harmed if emergency relief is denied.  *See Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 195-96 (4th Cir. 1977).  He is of course free to file a new complaint in this court should he wish to raise a constitutional challenge regarding the alleged January 8, 2007 incident.  A 42 U.S.C. § 1983 form packet shall be provided to Plaintiff.